Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALPERSTEIN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SONA NANOTECH INC., DAVID REGAN, and ROBERT RANDALL,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Kevin Alperstein ("Plaintiff") alleges the following upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included: (a) review and analysis of public filings with the United States Securities and Exchange Commission ("SEC") made by Sona Nanotech Inc. ("Sona" or the "Company") and related parties; (b) review and analysis of press releases and other publications disseminated by Sona and related parties; (c) review and analysis of shareholder communications, conference calls and postings on Sona's website concerning the Company's public statements; (d) review and analysis of news articles concerning Sona and related parties; and (e) review of other publicly available information concerning Sona, related parties, and/or the Individual Defendants (as defined below).

## NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of all persons or entities that purchased or otherwise acquired the publicly traded securities of Sona between July 2, 2020 and November 25, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiff alleges that Defendants violated the Exchange Act by publishing false and misleading statements to artificially inflate the Company's stock price.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

1

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered, the subsequent damages took place in, and the Company maintains locations in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.      Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Defendant Sona purports to be engaged in researching and developing gold nanorod products for diagnostic test and medical treatment applications. Sona is a Canadian corporation, with its head office located at Purdy's Wharf Tower II, Suite 2001 – 1969 Upper Water Street, Halifax, Nova Scotia, Canada B3J 3R7. Sona's securities trades over-the-counter ("OTC") under the ticker symbol "SNANF."

8.      Defendant David Regan ("Regan") served as the Company's Executive Officer ("CEO") during the Class Period.

9.      Defendant Robert Randall ("Randall") has served as the Company's Chief Financial Officer ("CFO") during the Class Period.

10.      Defendants Regan and Randall are collectively referred to herein as the "Individual Defendants."

11.      Each of the Individual Defendants:

2

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

15.    On July 2, 2020, the Company issued a press release announcing positive results of its rapid detection COVID-19 antigen test and its development plan. The press release states, in relevant part:

> July 2, 2020 – Halifax, Canada – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, is pleased to announce that its rapid detection, COVID-19 antigen test's laboratory validation studies of performance levels have resulted in a test sensitivity of 96%, test specificity of 96% and a Limit of Detection ("LOD") of $2.1 \times 10^2$ TCID50.  Sales of the tests will now be permitted under a 'research use only' label until full regulatory authority is granted, in relevant territories, at which time the 'research use only' label requirement would be lifted, as discussed below.
>
> *              *              *
>
> **Following consultation with MRIGlobal and the FDA** [U.S. Food and Drug Administration]**, Sona will enter into independent clinical, in-field evaluation studies to generate the data to support its analytical and clinical data as part of the submission it will make to Health Canada and the FDA for emergency use authorization ("EUA") approval. In-field collection of a minimum of 30 confirmed negative and 30 confirmed positive specimens and the associated data analysis is expected to be completed while technology transfer to manufacturers is still underway.** To that end, the Company has engaged with a contract research organization ("CRO") based in the U.S. to conduct one such study and a university affiliated laboratory outside of the U.S. to conduct a second. ***The Company has been informed that the results of these field studies should be provided by the end of July, at which time it intends to make final submissions to regulatory authorities in multiple jurisdictions.*** During this time, technology transfer will continue and quality assurance manufacturing batches are expected to be run with manufacturing partners. The Company is committed to maintaining ongoing evaluations of its test

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in order to understand its performance in a wide range of testing environments.

(Emphasis added.)

16.     The statements contained in ¶15 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) it was unreasonable for Sona to represent that it could receive results from field studies of its COVID-19 antigen test within a month; (2) Sona's positive statements about its COVID-19 antigen test were unfounded as the FDA would deprioritize EUA approval of Sona's antigen test finding it did not meet "the public health need" criterion; (3) it was unreasonable for Sona to believe that data gathered over such a short period of time would be sufficient for approval of its antigen test by either the FDA or Health Canada; (4) Sona would have to withdraw its submission for Interim Order ("IO") authorization from Health Canada for the marketing of its COVID-19 antigen test as it lacked sufficient clinical data to support approval; and (5) as a result, defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

17.     On August 6, 2020, the Company published a press release providing an update on the status of its COVID-19 antigen test and stating there would be a delay in results. The press release stated, in relevant part:

5

Halifax, Nova Scotia–(Newsfile Corp. – August 6, 2020) – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, announces that *its previously announced clinical, in-field evaluation studies for its rapid detection, COVID-19 antigen test that commenced in July continue and are now expected to return their full results within two weeks. The delays have been due to ethics review board approvals and a need to make study modifications to accommodate regulatory updates, including for study enrolment criteria and assessment at point of care settings, as well as for test handling procedures.* The evaluation protocol for these studies incorporates aspects of the revised guidance released by the FDA on July 29, 2020. The FDA's new template for commercial developers of non-lab COVID-19 tests included updated guidance on performance evaluation studies, comparator methodology, flex studies, human usability studies, and clinical evaluation, amongst other study components. The Company is committed to the robust evaluation of its COVID-19 antigen test and to submitting a comprehensive data set in its submissions to the FDA and Health Canada that adheres to its recommended guidance.

\*       \*       \*

*The data from these studies will be used to support the Company's analytical and clinical data as part of the submission it will make to Health Canada and the FDA for emergency use authorization ("EUA") approval for its COVID-19 antigen test.* In addition to its in-field clinical evaluation studies, the Company has also provided prototype tests to several potential customers, under 'research use only' labelling, with whom it has entered into letters of intent for larger purchases of its tests. These smaller studies are part of the Company's commitment to maintaining ongoing evaluations of its test in order to understand its performance in a wide range use case scenarios.

(Emphasis added.)

18.    On this news, shares of Sona fell $3.09 per share, or over 34%, to close at $5.91 per share on August 6, 2020.

6

19.     On October 29, 2020, the Company issued a press release announcing that the FDA deprioritized its EUA review of Sona's COVID-19 antigen test, stating in relevant part:

> October 29, 2020 – Halifax, Canada – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, ***received notice from the FDA that the Company's request for an emergency use authorization ("EUA") for the marketing of its rapid, COVID-19 antigen test in the United States "is not a priority" and consequently such authorization will not be issued at this time. The FDA cited current EUA request prioritization criteria as including "the public health need for the product"*** and did not comment on the performance of the Sona test.
>
> Health Canada continues its evaluation of the Company's application for an Interim Order ("IO") authorization for its test as a 'point-of-care' medical diagnostic device. The Company yesterday received additional questions on its application. Also, Health Canada has submitted the Company's tests to the Public Health Agency of Canada's National Microbiology Laboratory for evaluation, which is ongoing.
>
> (Emphasis added.)

20.     On this news, shares of Sona fell $2.77 per share, or over 48%, to close at $3.00 per share on October 29, 2020, damaging investors.

21.     On November 25, 2020, the Company issued a press release announcing that it withdrew its application of IO authorization from Health Canada for its COVID-19 antigen test, stating in relevant part:

> November 25, 2020 – Halifax, Canada – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, ***withdrew its application for an Interim Order authorization ("IO") from Health Canada for the marketing of its rapid, COVID-19 antigen test in order to obtain more clinical data to augment its submission.*** The Company is committed to working with regulators to provide additional information and analysis on its test and to re-submitting its application as quickly as possible.

7

In addition to continuing to pursue approval of the Company's rapid COVID-19 antigen test, which uses a nasal pharyngeal swab, the Company continues to validate its saliva sample-based version of the test. The Company intends to seek a large-scale trial specifically for its saliva-based test.

(Emphasis added.)

22.     On this news, shares of Sona fell $1.56 per share, or over 67%, to close at $0.74 per share on November 25, 2020, damaging investors.

23.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Sona securities publicly traded on the OTC during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Sona and its subsidiaries, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Sona securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Sona;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Sona to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Sona securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

30.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Sona shares met the requirements for listing, and were listed and actively traded on OTC, an efficient market;
- As a public issuer, Sona filed periodic public reports;
- Sona regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- Sona's securities were liquid and traded with sufficient volume during the Class Period; and
- Sona was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

31.     Based on the foregoing, the market for Sona securities promptly digested current information regarding Sona from all publicly available sources

and reflected such information in the prices of the securities, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

32.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

33.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made,

11

in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Sona securities during the Class Period.

37. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Sona were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Sona, their control over, and/or receipt and/or modification of Sona's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Sona, participated in the fraudulent scheme alleged herein.

38. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Sona personnel to members of the investing public, including Plaintiff and the Class.

39. As a result of the foregoing, the market price of Sona securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the

12

statements described above and/or the integrity of the market price of Sona securities during the Class Period in purchasing Sona securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

40.     Had Plaintiff and the other members of the Class been aware that the market price of Sona securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Sona securities at the artificially inflated prices that they did, or at all.

41.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

42.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Sona securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

43.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44.     During the Class Period, the Individual Defendants participated in the operation and management of Sona, and conducted and participated, directly and indirectly, in the conduct of Sona's business affairs. Because of their senior positions, they knew the adverse non-public information about Sona's misstatement of revenue and profit and false financial statements.

45.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information

13

with respect to Sona's financial condition and results of operations, and to correct promptly any public statements issued by Sona which had become materially false or misleading.

46.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Sona disseminated in the marketplace during the Class Period concerning Sona's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Sona to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Sona within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Sona securities.

47.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Sona.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

14

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: December 17, 2020          **THE ROSEN LAW FIRM, P.A.**


By:/s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS