POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ALPERSTEIN, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>SONA NANOTECH INC., DAVID REGAN, and ROBERT RANDALL,<br><br>      Defendants. | Case No. 2:20-cv-11405-MCS-MAA<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF VATTER INVESTMENT PARTNERS AND SLICE OF PIE, LLC FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF COUNSEL<br><br>DATE:  March 22, 2021<br>TIME:  9:00 a.m.<br>JUDGE:  Mark C. Scarsi<br>CTRM:  7C, 7th Floor |

MEMORANDUM OF POINTS AND AUTHORITIES

LYNN POWERS, Individually and on behalf of all others similarly situated,

                    Plaintiff,

          v.

SONA NANOTECH INC., DAVID REGAN, and ROBERT RANDALL,

                    Defendants.

Case No. 2:21-cv-00169-MCS-MAA

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...........................................................................1

II.     STATEMENT OF FACTS ................................................................................3

III.    ARGUMENT...................................................................................................8

      A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........................................................................................8

      B.   MOVANTS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ......9

           1.   Movants Are Willing to Serve as Class Representatives ................. 10

           2.   Movants Have the "Largest Financial Interest" ............................... 11

           3.   Movants Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure ......................................................... 13

           4.   Movants Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses.......................... 15

      C.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED........................................................................................16

IV.     CONCLUSION..............................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF,
    2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014) ........................................ 13

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) .................................................................................. 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .................................................................................. 8

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
    2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) ............................................... 12

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................................... 14

*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................................... 13

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) .......................................... 8, 9

*In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
    2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ........................................... 13

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................. 8

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ....................................................................................... 8

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................... 12

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................................... 11, 12

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ......................................................................................... 8

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
   2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ............................................ 12

*Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx),
   2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................................ 16

*Richardson v. TVIA, Inc.*, No. C-06-06304 RMW,
   2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007).......................................... 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................................... 14

## Statutes

15 U.S.C. § 78u-4.................................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .......................................................*passim*

## Rules

Fed. R. Civ. P. 23 ...............................................................................................*passim*

Fed. R. Civ. P. 42 ......................................................................................................... 1, 8

Movants Vatter Investment Partners and Slice of Pie, LLC (collectively, "Movants") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42 ("Rule 42"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Movants as Co-Lead Plaintiffs on behalf of persons or entities who purchased or otherwise acquired Sona Nanotech Inc. ("Sona" or the "Company") securities between July 2, 2020 and November 25, 2020, inclusive (the "Class Period") (the "Class"); and (3) approving Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that Sona and certain of its officers defrauded investors in violation of the Exchange Act.  Sona investors, including Movants, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of Sona securities to fall sharply, damaging Movants and other Sona investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the federal securities laws by the same group of defendants arising from the

same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with their transactions in Sona securities during the Class Period, Movants incurred losses of approximately $149,795 calculated on a first-in, first-out ("FIFO") basis, or approximately $154,068 calculated on a last-in, first-out ("LIFO") basis. *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A. Accordingly, Movants believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, Movants also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, Movants have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Movants respectfully request that the Court enter an order consolidating the Related Actions, appointing them as Co-Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the Complaint of the first-filed of the Related Actions, Sona purports to be engaged in researching and developing gold nanorod products for diagnostic test and medical treatment applications.

Sona is a Canadian corporation, with its head office located at Purdy's Wharf Tower II, Suite 2001 – 1969 Upper Water Street, Halifax, Nova Scotia, Canada B3J 3R7. Sona's securities trades over-the-counter ("OTC") under the ticker symbol "SNANF."

On July 2, 2020, the Company issued a press release announcing positive results of its rapid detection COVID-19 antigen test and its development plan.  The press release states, in relevant part:

> July 2, 2020 – Halifax, Canada – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-ofcare diagnostic tests, is pleased to announce that its rapid detection, COVID-19 antigen test's laboratory validation studies of performance levels have resulted in a test sensitivity of 96%, test specificity of 96% and a Limit of Detection ("LOD") of 2.1 x 102 TCID50. Sales of the tests will now be permitted under a 'research use only' label until full regulatory authority is granted, in relevant territories, at which time the 'research use only' label requirement would be lifted, as discussed below.

> \*      \*      \*

> ***Following consultation with MRIGlobal and the FDA*** [U.S. Food and Drug Administration], ***Sona will enter into independent clinical, in-field***

MEMORANDUM OF POINTS AND AUTHORITIES

3

*evaluation studies to generate the data to support its analytical and clinical data as part of the submission it will make to Health Canada and the FDA for emergency use authorization ("EUA") approval. In-field collection of a minimum of 30 confirmed negative and 30 confirmed positive specimens and the associated data analysis is expected to be completed while technology transfer to manufacturers is still underway*. To that end, the Company has engaged with a contract research organization ("CRO") based in the U.S. to conduct one such study and a university affiliated laboratory outside of the U.S. to conduct a second. *The Company has been informed that the results of these field studies should be provided by the end of July, at which time it intends to make final submissions to regulatory authorities in multiple jurisdictions*. During this time, technology transfer will continue and quality assurance manufacturing batches are expected to be run with manufacturing partners. The Company is committed to maintaining ongoing evaluations of its test in order to understand its performance in a wide range of testing environments.

(Emphasis added.)

Throughout the Class Period, the above-captioned defendants ("Defendants") made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) it was unreasonable for Sona to represent that it could receive results from field studies of its COVID-19 antigen test within a month; (2) Sona's positive statements about its COVID-19 antigen test were unfounded as the FDA would deprioritize EUA approval of Sona's antigen test finding it did not meet "the public health need" criterion; (3) it was unreasonable for Sona to believe that data gathered over such a short period of time would be sufficient for approval of its antigen test by either the FDA or Health Canada; (4) Sona would have to withdraw its submission for Interim Order ("IO") authorization from Health Canada for

the marketing of its COVID-19 antigen test as it lacked sufficient clinical data to support approval; and (5) as a result, defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On August 6, 2020, the Company published a press release providing an update on the status of its COVID-19 antigen test and stating there would be a delay in results.  The press release stated, in relevant part:

> Halifax, Nova Scotia–(Newsfile Corp. – August 6, 2020) – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, announces that *its previously announced clinical, in-field evaluation studies for its rapid detection, COVID-19 antigen test that commenced in July continue and are now expected to return their full results within two weeks. The delays have been due to ethics review board approvals and a need to make study modifications to accommodate regulatory updates, including for study enrolment criteria and assessment at point of care settings, as well as for test handling procedures*. The evaluation protocol for these studies incorporates aspects of the revised guidance released by the FDA on July 29, 2020. The FDA's new template for commercial developers of non-lab COVID-19 tests included updated guidance on performance evaluation studies, comparator methodology, flex studies, human usability studies, and clinical evaluation, amongst other study components. The Company is committed to the robust evaluation of its COVID-19 antigen test and to submitting a comprehensive data set in its submissions to the FDA and Health Canada that adheres to its recommended guidance.
>
> \*     \*     \*
>
> *The data from these studies will be used to support the Company's analytical and clinical data as part of the submission it will make to Health Canada and the FDA for emergency use authorization ("EUA") approval for its COVID-19 antigen test*. In addition to its infield clinical evaluation studies, the Company has also provided prototype tests to several

potential customers, under 'research use only' labelling, with whom it has entered into letters of intent for larger purchases of its tests. These smaller studies are part of the Company's commitment to maintaining ongoing evaluations of its test in order to understand its performance in a wide range use case scenarios.

(Emphasis added.)

On this news, shares of Sona fell $3.09 per share, or over 34%, to close at $5.91 per share on August 6, 2020.

On October 29, 2020, the Company issued a press release announcing that the FDA deprioritized its EUA review of Sona's COVID-19 antigen test, stating in relevant part:

October 29, 2020 – Halifax, Canada – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, *received notice from the FDA that the Company's request for an emergency use authorization ("EUA") for the marketing of its rapid, COVID-19 antigen test in the United States "is not a priority" and consequently such authorization will not be issued at this time. The FDA cited current EUA request prioritization criteria as including "the public health need for the product"* and did not comment on the performance of the Sona test.

Health Canada continues its evaluation of the Company's application for an Interim Order ("IO") authorization for its test as a 'point-ofcare' medical diagnostic device. The Company yesterday received additional questions on its application. Also, Health Canada has submitted the Company's tests to the Public Health Agency of Canada's National Microbiology Laboratory for evaluation, which is ongoing.

(Emphasis added.)

On this news, shares of Sona fell $2.77 per share, or over 48%, to close at $3.00 per share on October 29, 2020, damaging investors.

On November 25, 2020, the Company issued a press release announcing that it withdrew its application of IO authorization from Health Canada for its COVID-19 antigen test, stating in relevant part:

> November 25, 2020 – Halifax, Canada – Sona Nanotech Inc. (CSE: SONA), (OTCQB: SNANF) (the "Company"), a developer of rapid, point-of-care diagnostic tests, ***withdrew its application for an Interim Order authorization ("IO") from Health Canada for the marketing of its rapid, COVID-19 antigen test in order to obtain more clinical data to augment its submission***. The Company is committed to working with regulators to provide additional information and analysis on its test and to re-submitting its application as quickly as possible.

> In addition to continuing to pursue approval of the Company's rapid COVID-19 antigen test, which uses a nasal pharyngeal swab, the Company continues to validate its saliva sample-based version of the test. The Company intends to seek a large-scale trial specifically for its saliva-based test.

> (Emphasis added.)

On this news, shares of Sona fell $1.56 per share, or over 67%, to close at $0.74 per share on November 25, 2020, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-8 (S.D.N.Y. July 29,

2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Sona's securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## B.    MOVANTS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Movants should be appointed Co-Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the Related Actions and otherwise meet the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiffs in class actions brought under the Exchange Act. The

PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;

> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movants satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1. Movants Are Willing to Serve as Class Representatives

On December 17, 2020, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *PRNewswire* pursuant to Section

MEMORANDUM OF POINTS AND AUTHORITIES

10

21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors of Sona securities that they had until February 16, 2021—*i.e.*, 60 days from the date of the Notice—to file a motion to be appointed as Lead Plaintiff. *See* Pafiti Decl., Ex. B.

Movants have filed the instant motion pursuant to the Notice and have attached sworn Certifications executed on their behalf attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. C. Accordingly, Movants satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### 2.    Movants Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of their knowledge, Movants have the largest financial interest of any Sona investor seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts

in the Ninth Circuit, including in this District. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at *10-*11 (N.D. Cal. Jan. 9, 2012) (same). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *18-*19.

During the Class Period, Movants (1) purchased 28,273 shares of Sona securities; (2) expended $197,473 on their purchases of Sona securities; (3) retained all of their shares of Sona stock; and (4) as a result of the disclosures of the fraud, suffered a loss of $149,795 calculated on a FIFO basis, or approximately $154,068 calculated on a LIFO basis, in connection with their purchases of Sona securities. *See* Pafiti Decl., Ex. A. Because Movants possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Movants Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."    Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.    *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014).    "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at \*16 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The claims of Movants are typical of those of the Class. Movants allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Sona, or by omitting to state material facts necessary to make the statements they did make not misleading. Movants, as did all Class members, purchased Sona securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Movants are adequate representatives for the Class. Here, Movants have submitted signed Certifications executed on their behalf and declaring their commitment to protecting the interests of the Class. *See* Pafiti Decl., Ex. C. There is no antagonism between the interests of Movants and those of the Class, and their significant financial interest demonstrates that they have a sufficient interest in the outcome of this litigation that gives them an incentive to vigorously prosecute fraud claims on behalf of the Class. Moreover, Movants have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submit their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Further demonstrating their adequacy, Movants have submitted a Declaration executed on their behalf by their shared principal, Robert Vatter, attesting to, *inter alia*, his background, investing experience, understanding of the responsibilities of Co-Lead Plaintiffs pursuant to the PSLRA, decision to seek Movants' appointment as Co-Lead Plaintiffs, and the steps that Movants are prepared to take to prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D.

### 4. Movants Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Movants as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

MEMORANDUM OF POINTS AND AUTHORITIES

15

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Movants to fairly and adequately represent the Class has been discussed above.  Movants are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.

### C.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume.  *See* Pafiti Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a

decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *Id.* Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company. *See id.*

As a result of their extensive experience in similar litigation, Movants' choice of counsel, Pomerantz, have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Movants' selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available. Thus, Movants respectfully urge the Court to appoint Pomerantz to serve as Lead Counsel.

## IV. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Movants as Co-Lead Plaintiffs for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated: February 16, 2021      POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor

Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Movants*

CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti