Eric A. Herzog (Bar No. 229066)
eric.herzog@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street, Forty-First Floor
Los Angeles, California  90071
Telephone:   (213) 892-9200
Facsimile:   (213) 892-9494

Peter A. Stokes (admitted *pro hac vice*)
peter.stokes@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701
Telephone:   (512) 474-5201
Facsimile:   (512) 536-4598

Kelly A. Potter (admitted *pro hac vice*)
kelly.potter@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX 77010
Telephone:   (713) 651-5151
Facsimile:   (713) 651-5246

Attorneys for Defendants
SONA NANOTECH INC.,
DARREN ROWLES, DAVID REGAN and
ROBERT RANDALL

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONA NANOTECH INC. SECURITIES LITIGATION | Case No. 2:20-CV-11405-MCS-MAA |
| | The Honorable Mark C. Scarsi |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |
| | Hearing Date:   July 12, 2021<br>Hearing Time:   9:00 a.m.<br>Courtroom:       7C |

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT AND AUTHORITIES ......................................................................... 2

      I.      PLAINTIFF IDENTIFIES NO FRAUDULENT DISCLOSURES ............................................................................ 2

     II.     PLAINTIFF'S CASE CITATIONS CONFIRM THAT THIS CASE FAILS ON THE PLEADINGS ....... 4

CONCLUSION ........................................................................................................ 10

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Securities Litigation*,
  2021 WL 2448223 (9th Cir. June 22, 2021) ...................................................... 9

*In re Amylin Pharmaceuticals, Inc. Securities Litigation*,
  2003 WL 21500525 (S.D. Cal. May 1, 2003) ...................................................... 7

*In re Apple Inc. Securities Litigation*,
  2020 WL 2857397 (N.D. Cal. June 2, 2020) ...................................................... 5

*In re Apple Inc. Secs. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...................................................... 5

*In re Aqua Metals, Inc. Securities Litigation*,
  2019 WL 3817849 (N.D. Cal. Aug. 14, 2019) ...................................................... 7

*Berson v. Applied Signal Technology, Inc.*,
  527 F.3d 982, 984 (9th Cir. 2008) ...................................................... 6

*Boston Retirement System v. Uber Technologies, Inc.*,
  2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ...................................................... 8

*Brown v. China Integrated Energy, Inc.*,
  875 F. Supp. 2d 1096 (C.D. Cal. 2012) ...................................................... 8

*Construction Laborers Pension Trust of Greater St. Louis v.
  Neurocrine Biosciences, Inc.*,
  2008 WL 4370010 (S.D. Cal. Sept. 23, 2008) ...................................................... 9

*Crihfield v. CytRx Corp.*,
  2017 WL 2819834 (C.D. Cal. June 14, 2017) ...................................................... 2

*In re Edward D. Jones & Co., L.P. Secs. Litig.*,
  2019 WL 5887209 (E.D. Cal. Nov. 12, 2019) ...................................................... 9

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ...................................................... 5

*Evanston Police Pension Fund v. McKesson Corp.*,
  411 F. Supp. 3d 580 (N.D. Cal. 2019) ...................................................... 8

*Feyko v. Yuhe International, Inc.*,
  2013 WL 816409 (C.D. Cal. Mar. 15, 2013) ...................................................... 8

*In re Forest Laboratories Securities Litigation*,
  2006 WL 5616712 (S.D.N.Y. July 21, 2006) ...................................................... 8

DOCUMENT PREPARED ON RECYCLED PAPER

*In re Gilead Sciences Securities Litigation*,
536 F.3d 1049 (9th Cir. 2008) ................................................................................. 8

*In re Immune Response Securities Litigation*
375 F. Supp. 2d 983 (S.D. Cal. 2005) ...................................................................... 6

*In re Innocoll Holdings Public Ltd. Co. Securities Litigation*,
2020 WL 1479128 (E.D. Pa. March 25, 2020) ........................................................ 6

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ..................................................................................... 5

*Karsinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ............................................................. 6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................................... 5

*In re MannKind Securities Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011) ..................................................................... 7

*Matrixx Initiatives, Inc. v. Siracusano*,
131 S. Ct. 1309 (2011) ............................................................................................. 5

*Mausner v. Marketbyte LLC*,
2013 WL 12073832 (S.D. Cal. Jan. 4, 2013) ........................................................... 8

*In re Merit Medical Systems, Inc. Securities Litigation*,
2021 WL 1258590 (C.D. Cal. Mar. 16, 2021) ......................................................... 6

*Mutza v. Emulex Corp.*,
843 F. App'x 951, 953 (9th Cir. 2021), ................................................................. 10

*In re Myriad Genetics, Inc.*,
2021 WL 977770 (D. Utah Mar. 16, 2021) .............................................................. 8

*In re National Golf Properties, Inc.*,
2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) ....................................................... 6

*In re Nektar Therapeutics*,
2020 WL 3962004 (C.D. Cal. July 13, 2020) .......................................................... 9

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ............................................................................... 4, 5

*In re PTC Therapeutics, Inc. Securities Litigation*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) .............................................................. 7

*In re Qualcomm Incorporated Securities Litigation*,
2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) .......................................................... 8

*In re Quality Systems, Inc. Securities Litigation*,
865 F.3d 1130 (9th Cir. 2017) .................................................................................. 8

DOCUMENT PREPARED
ON RECYCLED PAPER

- iii -

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ...................................................................5

*Roberti v. OSI Systems, Inc.*,
    2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ........................................7

*Schueneman v. Arena Pharmaceuticals, Inc.*,
    840 F.3d 698 (9th Cir. 2016) ...................................................................5

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...................................................6

*Skiadas v. Acer Therapeutics Inc.*,
    2020 WL 4208442 (S.D.N.Y. July 21, 2020) ..........................................7

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ...................................................................8

*In re STEC Inc. Securities Litigation*,
    2011 WL 2669217 (C.D. Cal. June 17, 2011) .........................................6

*Sudunagunta v. NantKwest, Inc.*,
    2017 WL 8810760 (C.D. Cal. Sept. 20, 2017) ........................................8

*In re Transkaryotic Therapies, Inc. Securities Litigation*,
    319 F. Supp. 2d 152 (D. Mass. 2004) ......................................................7

*Turocy v. El Pollo Loco Holdings, Inc.*,
    2017 WL 3329543 (C.D. Cal. Aug. 4, 2017) ...........................................6

*Union Asset Management Holding AG v. SanDisk LLC*,
    2017 WL 3097184 (N.D. Cal. June 22, 2017) .........................................6

*In re Viropharma Inc. Securities Litigation*,
    21 F. Supp. 3d 458 (E.D. Pa. 2014) .........................................................7

*Voulgaris v. Array Biopharma Inc.*,
    2020 WL 8367829 (D. Colo. Nov. 24, 2020) ..........................................6

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) .....................................................................5

*In re Wells Fargo & Co. Shareholder Derivative Litigation*,
    282 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................8

*Westley v. Oclaro, Inc.*,
    897 F. Supp. 2d 902 (N.D. Cal. 2012) .....................................................6

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1100 (C.D. Cal. 2005) ...................................................7

*Zak v. Chelsea Therapeutics Intern., Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ...................................................................7

DOCUMENT PREPARED
ON RECYCLED PAPER

- iv -

## REPLY MEMORANDUM

Defendants reply as follows in support of their motion to dismiss.[1]

## INTRODUCTION

Plaintiff fails to cite a single case from any jurisdiction where a court has allowed Rule 10b-5 claims as weak as those pled here to survive a motion to dismiss under the PSLRA. There is no particularized allegation that Sona – a nascent life sciences company whose rapid COVID-19 antigen test had been validated in a highly credible laboratory and clinical trial – had been advised by *any* regulator (or by anyone else) at *any* time before *any* of the challenged public statements that *any* of Sona's specific study methodologies, parameters, or results were improper. There is likewise no allegation Sona was ever criticized in real time by any regulator or outside entity (including MRIGlobal, SaudiVax, or anyone else) regarding the type of virus used, the number of days from symptom onset for each patient in the study, or any other specific study parameters before any of the challenged public disclosures. The Opposition also tellingly fails to cite *any* specific preexisting FDA guidance or rule, supposedly violated by Sona, that was in existence before *any* of Sona's alleged public misstatements. That is not surprising, because the events of this case involved emergency-use development during a once-a-century pandemic, on an extremely compressed timeline, with dozens of well-funded competitors, on a crowded playing field with rapidly-evolving FDA guidance.

This case comes nowhere close to the cut line separating PSLRA-compliant cases from the legions of meritless "fraud-by-hindsight" suits like this one that are consistently dismissed on the pleadings. Plaintiff's case citations involve readily distinguishable situations with particularized factual assertions that companies had contemporaneous knowledge of specific existing facts contradicting their public disclosures – authorities that only underscore the *absence* of such allegations here.

---

[1] References to Plaintiff's Opposition will be abbreviated "Opp." References to Defendants' opening memorandum (ECF No. 23) will be abbreviated "Mem."

- 1 -

DOCUMENT PREPARED
ON RECYCLED PAPER

## ARGUMENT AND AUTHORITIES

### I.    PLAINTIFF IDENTIFIES NO FRAUDULENT DISCLOSURES.

Unable to find falsity in Sona's actual disclosures, Plaintiff offers a distorted, cherry-picked rendition of Sona's public statements,[2] while failing to identify specific contemporaneously-known facts that contradicted what Sona told investors.[3]

- While the Opposition cites Sona's March 12, 2021 disclosure that it "ha[d] an ongoing, open dialogue with regulators to ensure th[at] Sona's test [wa]s being developed within the parameters regulators have outlined," Plaintiff cites no particularized facts showing that Defendants had been told by any regulator in March or April 2020 (when the lockdowns had just begun) that Sona was violating any regulatory "parameters" (which consistently evolved).  (*See* Opp. at 21.)

- Sona made no public representation in March and April of 2020 that it was already conducting a "formal clinical study" using live virus samples (or that such a study would never be needed).  (*See* Opp. at 14; Mem. at 18.)  Sona instead disclosed on March 30 and 31, 2020 that it had been using "samples of the virus' antigen and antibodies" in laboratory testing, and that the "development of a prototype" was still ongoing (*see* Compl. ¶ 87).  Sona further disclosed on April 13 it had just "[c]ommenced work" to "prepare validation protocols," thus making clear "validation" was not complete (s*ee* Mem. at 18).  There is also no particularized allegation showing that Sona's early-stage use of treated virus samples was fraudulent, or that any outside entity advised

---

[2] Plaintiff asserts in conclusory fashion that Defendants' exhibits – which primarily include Sona's quarterly filings and full versions of the same press releases already linked in the Complaint – should not be considered, without explaining which particular exhibits are purportedly improper.  (*See* Opp. at 3-4 n. 3.)  Consideration of such documents is plainly proper.  (*See* ECF No. 96, Def. Mem. at 11 n. 11.)

[3] *See, e.g., Crihfield v. CytRx Corp.*, 2017 WL 2819834, at *16 (C.D. Cal. June 14, 2017) (holding that lack of inconsistent contemporaneous facts supports dismissal).

- 2 -

DOCUMENT PREPARED ON RECYCLED PAPER

Sona before the May 12 press release that using treated virus samples was improper.  Plaintiff also does not allege with specificity whether live virus samples were even available for formal trials at that stage.

- Plaintiff ignores Sona's cautionary statements (Mem. at 12-14) and the consistent changes in FDA guidance (*id.* at 14-16), which weigh against inferring that Sona knew its processes were supposedly inadequate.

- The Opposition faults Sona for including seven samples from patients with 0-6 days of symptom onset among the 39 positive samples that Sona disclosed were in the SaudiVax study (Opp. at 14; Compl. ¶ 141), but again does not dispute the results showed 100% sensitivity for patients in this subgroup.  (*See* Opp. at 14; Mem. at 23.)  As previously stated, because patients in that subgroup had higher viral loads that would be easier to detect, Sona included more patients with smaller viral loads to show the test could successfully detect the virus in those more difficult to detect samples.  (*See* Mem. at 23.)  There is no allegation any regulator (or SaudiVax) had advised Sona before the November 30 press release that it needed to include more patients in the 0-6 category.  (*See id.*)  Plaintiff also does not allege Sona publicly represented that its test was intended solely or primarily for patients within 0-6 days of symptom onset, or that Sona made public representations about the number of patients in its studies that fell into that subcategory.

- There is also no allegation that the "discordant" results produced in the subsequent tests conducted by Canada's National Microbiology Laboratory ("NML") (or any other discordant results) had been furnished to Defendants prior to Sona's November 30, 2020 statement that it was withdrawing its Health Canada application.  (*See* Mem. at 22-23.)  There is no assertion that the SaudiVax study involved the same strains or variants of virus that were used in the NML's own testing,

which the Complaint does not dispute involved different samples of a different viral variant than the samples used in the SaudiVax study.

- Plaintiff selectively recites David Regan's October 1, 2020 "100% confident" comment five times in the Opposition *without even once mentioning* his caution moments later that "the timeline" for approval was "unclear." (*See* Opp. at 2, 6, 14, 18, 24; Mem. at 19-20.)

- Plaintiff appears to ignore Defendants' argument that the involvement of MRIGlobal, SaudiVax, GE Healthcare and NGen weighs heavily against inferring fraud. (*See* Mem. at 30-31.) Plaintiff fails to explain why MRIGlobal or SaudiVax would willingly lend their imprimatur to studies that were known to be fraudulent or scientifically invalid.

- Plaintiff alleges a "14,000% gain" in Sona's stock price, but do not allege any Defendants capitalized by selling their shares (which weighs *against* scienter). (*See* Opp. at 24; Mem. at 10, 30 & footnotes 9 and 45.) Clinical-stage biotech stocks are notoriously volatile, and cases involving large stock declines are routinely dismissed. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 412 (9th Cir. 2020) (36% decline).

- Plaintiff lastly ignores its own allegations about how analysts and the market were well aware of the fact that other tests were being approved and the timing and competitive pressures that Sona was under (and the disadvantages companies with later-approved tests would face given the expectation the pandemic would eventually wane and the head start companies with earlier-approved tests would have). (*See* Mem. at 16.)

## II.    PLAINTIFFS' CASE CITATIONS CONFIRM THAT THIS CASE FAILS ON THE PLEADINGS.

Contrary to Plaintiff's suggestion that *Nguyen* be limited to "its facts," *Nguyen* is consistent with prior Ninth Circuit law, the law of other circuits (and the consistent approach of district courts confronting similar allegations), and Section 10(b)'s plain

language, which require allegations approaching actual intent to defraud and not simple (or even gross) negligence.[4]  *Nguyen* is also consistent with settled law that scienter is much more difficult to plead when, as here, insider trading or other personal financial motives are not alleged.[5]  The opinion is squarely on point.

Plaintiff's case citations simply highlight the types of allegations necessary to survive dismissal that are absent here.  The complaints in each of Plaintiff's post-PSLRA cases[6] contained ***particularized*** allegations supporting a strong inference that the defendants had ***contemporaneous knowledge*** of ***specific facts*** that contradicted what the defendants were publicly telling investors.[7]  No such facts are pled here.

[4] *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) (Rule 10b-5 requires "intent to deceive, manipulate, or defraud"); Mem. (ECF No. 56) at footnote 38.

[5] *See Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001) (plaintiffs face "correspondingly greater" burden to show defendants' knowledge of contrary facts when motive is not alleged); *see* Mem. at 10 footnote 9 (collecting cases).

[6] Plaintiff cites *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996), but the complaint in that action predated the PSLRA, which elevated the pleading standard for scienter from the preexisting Rule 9(b) provision allowing scienter to be averred generally merely so defendants could "prepare an adequate answer."  *See id.*  Even in *Warshaw*, the complaint asserted that the defendants "knew" facts contradicting their disclosures, which has not been pled with particularity here.  *See id.*

[7] In *In re Apple Inc. Securities Litigation*, for example, the complaint alleged the existence of specific hard historical ***facts*** – that demand for iPhones in China was already declining – about which it was "simply implausible" the CEO would not have known at the time of his alleged contrary public statements.  *See* 2020 WL 2857397, at *25-26 (N.D. Cal. June 2, 2020); *see also In re Apple Inc. Secs. Litig.*, 2020 WL 6482014, at *11-12 (N.D. Cal. Nov. 4, 2020).  In *Schueneman v. Arena Pharmaceuticals, Inc.*, the CEO knew of internal animal studies showing that a weight loss drug caused cancer, yet represented that the animal studies demonstrated the "long-term safety" of the drug.  840 F.3d 698, 707-08 (9th Cir. 2016).  In *Matrixx Initiatives, Inc. v. Siracusano*, the company "received information that plausibly indicated a reliable causal link between [its product] and anosmia" (the loss of sense of smell), yet called media reports of such a link "completely unfounded and misleading."  131 S. Ct. 1309, 1316, 1323 (2011).  Likewise, in *Khoja v. Orexigen Therapeutics, Inc.*, the complaint alleged that management knew a study had been terminated, yet continued to represent publicly that the study was "continuing."  899 F.3d 988, 1016 (9th Cir. 2018).  In *Reese v. Malone*, the defendant publicly stated that corrosion was appearing in oil transit lines at a "low manageable" rate despite

Document Prepared on Recycled Paper

- 5 -

Further, unlike in Plaintiff's cited authorities, there are no particularized allegations showing that Defendants knew of any specific study results that contradicted their public disclosures[8] or misrepresented any specific communications

having access to information showing a high rate of corrosion.  747 F.3d 557, 569-70 (9th Cir. 2014).  In *In re Merit Medical Systems, Inc. Securities Litigation*, the company allegedly knew of significant ongoing integration problems, yet represented integration was proceeding successfully.  2021 WL 1258590, at *2-3 (C.D. Cal. Mar. 16, 2021).  In *Westley v. Oclaro, Inc.* the plaintiff alleged contemporaneous fact showing that "Defendants were aware of [a downturn in demand] in April 2010," before making public statements about "strong customer demand."  897 F. Supp. 2d 902, 936 (N.D. Cal. 2012).  In *Karsinski v. Stamps.com, Inc.*, the defendants allegedly knew UPS had repeatedly expressed displeasure with the company's business practices, yet publicly represented that UPS was "very happy" with the company's business model.  2020 WL 281716, at *11 (C.D. Cal. Jan. 17, 2020).  In *Shenwick v. Twitter, Inc.*, the executives claimed that monthly user growth was accelerating, while concealing known facts about stagnant or declining user growth.  282 F. Supp. 3d 1115, 1136-37 (N.D. Cal. 2017).  In *Union Asset Management Holding AG v. SanDisk LLC*, the company knew it had missed its internal sales forecast for a key business unit by more than 30%.  2017 WL 3097184, at *1-2 (N.D. Cal. June 22, 2017).  In *In re National Golf Properties, Inc.*, the plaintiffs alleged specific facts showing "contemporaneous knowledge of negative financial information" before the challenged disclosures.  2003 WL 23018761, at *8 (C.D. Cal. Mar. 19, 2003).  In *Berson v. Applied Signal Technology, Inc.*, the company allegedly knew of four major stop-work orders, yet failed to disclose them and instead continued to count revenue from these contracts as part of its backlog.  527 F.3d 982, 984, 988 (9th Cir. 2008).  In *In re STEC Inc. Securities Litigation*, the company knew a large contract it had announced was simply a "one-off" arrangement, yet made misleading statements portraying contract as showing higher ongoing demand.  2011 WL 2669217, at *7-8 (C.D. Cal. June 17, 2011).  *In Turocy v. El Pollo Loco Holdings, Inc.*, the defendants allegedly knew pricing changes were causing negative results, but made contrary public disclosures.  2017 WL 3329543, at *9-10 (C.D. Cal. Aug. 4, 2017).

[8] In *Voulgaris v. Array Biopharma Inc.*, the company selectively touted certain study results while omitting contrary data, including that patients who took the drug had lower overall survival.  2020 WL 8367829, at *8 (D. Colo. Nov. 24, 2020).  In *In re Immune Response Securities Litigation*, the company concealed that 90% of the patients in one study showed no difference in viral load from taking company's drug.  375 F. Supp. 2d 983, 1002, 1020 (S.D. Cal. 2005).  In *In re Innocoll Holdings Public Ltd. Co. Securities Litigation*, the company's executives allegedly told a confidential witness the company's medical product was a "device," which would require additional clinical trials, yet publicly suggested existing trials would be sufficient.

- 6 -

DOCUMENT PREPARED ON RECYCLED PAPER

with regulators.[9]  Plaintiff also cites cases with detailed allegations from internal "confidential witnesses" attributing knowledge of contrary facts to key executives – allegations that, again, have no counterpart here.[10]  Many of Plaintiff's cases involve

_____

2020 WL 1479128, at *3, 15(E.D. Pa. March 25, 2020).  In *In re PTC Therapeutics, Inc. Securities Litigation*, the company told investors it had proven that its drug was effective despite knowing study results showing the drug did not work for the vast majority of patients.  2017 WL 3705801, at *13-14 (D.N.J. Aug. 28, 2017).  In *In re Viropharma Inc. Securities Litigation*, the FDA had allegedly told the defendants "on five occasions" that their study "was inadequate," yet the defendants made inconsistent public disclosures.  21 F. Supp. 3d 458, 465 (E.D. Pa. 2014).

[9] In *Skiadas v. Acer Therapeutics Inc.*, by contrast, the company represented that the FDA had "agreed" during a meeting that "additional clinical development is not needed," but later admitted the FDA had only told them an additional trial was "likely" not needed.  2020 WL 4208442, at *6-7 (S.D.N.Y. July 21, 2020).  Similarly, in *Zak v. Chelsea Therapeutics Intern., Ltd.*, the defendants told investors the FDA had "agreed" the company could submit its new drug application "without the need for any further efficacy studies," without disclosing the defendants' knowledge that two successful efficacy studies were expected.  780 F.3d 597, 609 (4th Cir. 2015).  In *In re Transkaryotic Therapies, Inc. Securities Litigation*, the company represented that the FDA merely had asked for "further explanation in several areas and requested additional data," when in fact the FDA's letter to the company had made clear new trials were necessary and submission of additional data from existing studies would not suffice.  319 F. Supp. 2d 152, 156 (D. Mass. 2004).  In *In re MannKind Securities Actions*, the defendants falsely represented the FDA had affirmatively "accepted, or blessed, or agreed to the Defendants' bioequivalency methodology" when "the FDA had not, in fact, done any such thing. . . ."  835 F. Supp. 2d 797, 809-10 (C.D. Cal. 2011).  In *Yanek v. Staar Surgical Co.*, the FDA had issued an inspection report to the company detailing "significant objectionable conditions," which the company omitted from its public disclosures.  388 F. Supp. 2d 1100, 1119-20, 1130-31 (C.D. Cal. 2005).  In *In re Amylin Pharmaceuticals, Inc. Securities Litigation*, the defendants were allegedly "privy to information – *i.e.*, the statements made in the 1997 meeting with the FDA – which they did not disclose and which seriously undermines any belief Defendants may have had regarding the sufficiency of the trials."  2003 WL 21500525, at *9 (S.D. Cal. May 1, 2003).

[10] In *In re Aqua Metals, Inc. Securities Litigation*, the complaint contained allegations from multiple confidential witnesses that the company's machines did not work and that the individual defendants directly participated in "sham" on-site demonstrations with analysts and investors.  2019 WL 3817849, at *9-10 (N.D. Cal. Aug. 14, 2019).  In *Roberti v. OSI Systems, Inc.*, the complaint similarly contained numerous allegations from confidential witnesses that company knew its machines were not

- 7 -

DOCUMENT PREPARED ON RECYCLED PAPER

attempts to conceal blatantly improper activity.[11]  Plaintiff admits "that Sona is a real

compliant with TSA requirements.  2015 WL 1985562, at *2-3 (C.D. Cal. Feb. 27, 2015).  Likewise, in *In re Quality Systems, Inc. Securities Litigation*, the complaint contained "confidential witness" allegations showing that executives had real-time access to sales information contradicting their disclosures.  865 F.3d 1130, 1145 (9th Cir. 2017).  Similarly, in *In re Myriad Genetics, Inc.*, a confidential witness allegedly directly told the company's president that the company's test had not been validated, yet the company represented that the test was "clinically proven to enhance medication selection."  2021 WL 977770, at *9 (D. Utah Mar. 16, 2021).  In *South Ferry LP, No. 2 v. Killinger*, the district court inferred that the defendants "had knowledge of WAMU's difficulties with their information systems" before making allegedly contrary public statements.  542 F.3d 776, 781-82 (9th Cir. 2008).

[11] *In re Wells Fargo & Co. Shareholder Derivative Litigation* involved a high-profile scandal where a bank allegedly created millions of deposit and credit card accounts without customer knowledge or consent, so that higher fees could be charged.  282 F. Supp. 3d 1074, 1082 (N.D. Cal. 2017).  In *Boston Retirement System v. Uber Technologies, Inc.*, the complaint alleged specific facts that the company was continuing "to launch in new markets in ways it knew were undoubtedly illegal," including by paying "bribes."  2020 WL 4569846, at *5-6 (N.D. Cal. Aug. 7, 2020).  In *Evanston Police Pension Fund v. McKesson Corp.*, the executives "falsely attribute[d] generic drug price increases to non-existent supply disruptions" despite having "access to information putting them on notice that the price increases were not driven by legitimate supply disruptions" but by improper collusive activity.  411 F. Supp. 3d 580, 602-02 (N.D. Cal. 2019).  In *Sudunagunta v. NantKwest, Inc.*, the plaintiff pled "a detailed theory that [the CEO] and his associates hid the true extent of his executive compensation and dealings with his own, related companies." 2017 WL 8810760, at *1 (C.D. Cal. Sept. 20, 2017).  In *In re Forest Laboratories Securities Litigation*, the defendants "had knowledge of unfavorable studies," "knowingly promoted" their drugs for "unapproved, off-label uses," and reaped $300 million in profits from "unusual" insider stock sales.  2006 WL 5616712, at *10-11 (S.D.N.Y. July 21, 2006).  In *In re Qualcomm Incorporated Securities Litigation*, the executives were alleged with particularity to have been "directly and extensively involved in developing and maintaining" a discriminatory licensing model that violated antitrust law.  2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019).  In *Feyko v. Yuhe International, Inc.*, the CEO allegedly proposed a "fake deal" to lure American investment.  2013 WL 816409, at *5 (C.D. Cal. Mar. 15, 2013).  In *In re Gilead Sciences Securities Litigation*, the company allegedly engaged in extensive illegal off-label marketing of a drug.  536 F.3d 1049, 1052-53 (9th Cir. 2008).  In *Mausner v. Marketbyte LLC*, the defendants ran a serial "pump-and-dump" scheme disseminating false "reports" to promote microcap stocks.  2013 WL 12073832, at *1-2, 9-10 (S.D. Cal. Jan. 4, 2013).  In *Brown v. China Integrated Energy, Inc.*, the

- 8 -

DOCUMENT PREPARED
ON RECYCLED PAPER

biotech company, not a sham," and that "Defendants attempted to develop a viable, widespread, and profitable" COVID-19 test and "wanted to succeed in that endeavor, which involved risks to Sona and its investors in exchange for a potentially high reward." Opp. at 1. These admissions flatly contradict Plaintiff's "fraud" theory.

Plaintiff also relies on *Construction Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.*, a case that ***granted*** dismissal despite allegations that the executives received a "warning" that their FDA application was supported by insufficient data. 2008 WL 4370010, at *4 (S.D. Cal. Sept. 23, 2008).

In sum, Plaintiff's cases simply establish that the "cut line" for surviving a motion to dismiss is far above what Plaintiff has alleged here. Plaintiff identifies no PSLRA case that survived dismissal where, as here, there were no allegations of suspicious personal profits ***and*** no specific allegations that Defendants knew of specific contrary facts at the time of their disclosures. Defendants also incorporate their prior arguments about the PSLRA safe harbor, bespeaks caution doctrine, and the protections for statements of opinion. (*See* Mem. at 28-29.) Lastly, Plaintiff fails to cite any facts in support of their purported "scheme liability" claim other than David Regan's "100% confident" statement (*see* Opp. at 18), which is simply a deficiently-pled misstatement allegation. While a ***properly pled*** misrepresentation may be separately actionable as a "scheme" claim, insufficient misrepresentation claims cannot simply be repackaged as scheme claims, and Plaintiff identifies no particularized facts that would support a scheme claim.[12]

company touted purported factories in China that did not actually produce anything, and the company's outside auditor resigned after management refused to cooperate in an investigation of this fraud. 875 F. Supp. 2d 1096, 1101-02 (C.D. Cal. 2012). In Plaintiff's supplemental authority, *In re Alphabet, Inc. Securities Litigation*, the company allegedly received a specific memo warning of cybersecurity lapses that would likely trigger "immediate regulatory interest" if disclosed, which the company decided to "conceal." 2021 WL 2448223, at *4-5 (9th Cir. June 16, 2021).

[12] *See In re Nektar Therapeutics*, 2020 WL 3962004, at *14 (C.D. Cal. July 13, 2020) (dismissing scheme claim); *In re Edward D. Jones & Co., L.P. Secs. Litig.*, 2019 WL 5887209, at *7-8 (E.D. Cal. Nov. 12, 2019) (dismissing scheme claim that was

DOCUMENT PREPARED ON RECYCLED PAPER

## CONCLUSION

The Court should thus dismiss this action with prejudice.[13]  The severity of the deficiencies, coupled with Plaintiff's failure to identify any new allegations that could change the outcome (as well as Plaintiff's counsel's familiarity with the pleading standards), confirms that further amendment would be futile.  *See Mutza v. Emulex Corp.*, 843 F. App'x 951, 953 (9th Cir. 2021) (affirming denial of leave to amend where "Plaintiff identified no additional facts he would have pleaded to remedy the deficiencies in his operative complaint").

Dated:  June 22, 2021

ERIC HERZOG
PETER STOKES
**NORTON ROSE FULBRIGHT US LLP**

By_____/s/ Peter A. Stokes_____
    PETER A. STOKES
    Attorneys for Defendants
    SONA NANOTECH INC., DAVID
    REGAN, ROBERT RANDALL, AND
    DARREN ROWLES

---

"nothing more than a repackaging of the Rule 10b-5(b) omission claims" that were previously deemed insufficient to state a claim under Rule 10b-5(b)).

[13] Plaintiff contends that leave to amend was granted "twice" in *Varjabedian v. Emulex Corporation* (Opp. at 25 n. 12), but the docket sheet reflects only one amended complaint, which the defendants had stipulated could be filed.  *See* Case No. SACV 15-00554 CJC(JCGx), ECF Nos. 14, 29 (C.D. Cal.).

DOCUMENT PREPARED ON RECYCLED PAPER

## **PROOF OF SERVICE**

I, Peter A. Stokes, declare:

I am a citizen of the United States and employed in Travis County, Texas. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701, with a Los Angeles office located at 555 South Flower Street, Forty-First Floor, Los Angeles, California 90071. On June 22, 2021, I served a copy of the within document(s):

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail.

☐    by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒    by transmitting via e-mail or other electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

- 11 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Ivy T.Ngo (249860)
Velvel (Devin) Freedman
Constantine P. Economides
**ROCHE FREEDMAN LLP**
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 971-5943
ingo@rcfllp.com
vel@rcfllp.com
ceconomides@rcfllp.com

**THE SCHALL LAW FIRM**
Brian Schall (290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Attorney for Lead Plaintiff
Meridian Media Ventures Inc. and
the Putative Class*

DOCUMENT PREPARED
ON RECYCLED PAPER

- 12 -