Eric A. Herzog (Bar No. 229066)
eric.herzog@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street, Forty-First Floor
Los Angeles, California  90071
Telephone:   (213) 892-9200
Facsimile:   (213) 892-9494

Peter A. Stokes (admitted *pro hac vice*)
peter.stokes@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701
Telephone:   (512) 474-5201
Facsimile:   (512) 536-4598

Kelly A. Potter (admitted *pro hac vice*)
kelly.potter@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX 77010
Telephone:   (713) 651-5151
Facsimile:   (713) 651-5246

Attorneys for Defendants
SONA NANOTECH INC.,
DARREN ROWLES, DAVID REGAN and
ROBERT RANDALL

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONA NANOTECH INC. SECURITIES LITIGATION | Case No. 2:20-CV-11405-MCS-MAA |
| | The Honorable Mark C. Scarsi |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** |
| | Hearing Date:  January 10, 2022<br>Hearing Time:  9:00 a.m.<br>Courtroom:    7C |

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT AND AUTHORITIES .......................................................................... 3

      I.     THE OPPOSITION OVERSTATES SONA'S DISCLOSURES ................................................................... 3

      II.    PLAINTIFFS' CASE CITATIONS CONFIRM THAT THIS CASE FAILS ON THE PLEADINGS ....... 7

      III.   DISMISSAL SHOULD BE WITH PREJUDICE ............ 9

CONCLUSION ......................................................................................................... 10

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davoli v. Costco Wholesale Corp.*,
854 F. App'x 116 (9th Cir. July 20, 2021) ........................................................... 2

*In re Edward D. Jones & Co., L.P. Secs. Litig.*,
2019 WL 5887209 (E.D. Cal. Nov. 12, 2019) ...................................................... 9

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ............................................................................................. 7

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ................................................................................ 7

*In re Nektar Therapeutics*,
2020 WL 3962004 (C.D. Cal. July 13, 2020) ...................................................... 9

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ...........................................................2, 6, 7, 9, 10

*In re NVIDIA Corp. Secs. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ............................................................................ 8

*Plumley v. Sempra Energy*,
847 F. App'x 426 (9th Cir. Feb. 26, 2021) ........................................................... 2

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ............................................................................ 8

*Sayce v. Forescout Techns., Inc.*,
2021 WL 4594768 (N.D. Cal. Oct. 6, 2021) ....................................................... 2

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996) ................................................................................ 7

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ............................................................................ 2

**Rules and Statutes**

Federal Rule of Civil Procedure 11(b) ...................................................................... 9

Private Securities Litigation Reform Act ("PSLRA") ..................................... 1, 7, 8

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## **REPLY MEMORANDUM**

Defendants reply as follows in support of their motion to dismiss.[1]

## **INTRODUCTION**

As with their prior Opposition, Plaintiff fails again to cite a case from any jurisdiction where a court has allowed Rule 10b-5 claims as weak as those pled here to survive a motion to dismiss under the PSLRA.  There are simply no particularized allegations that Sona was advised by anyone (including the FDA, Health Canada, MRIGlobal, SaudiVax, or anyone else) at any time before any of the challenged public statements that Sona's COVID-19 test had no prospects for approval, let alone that Sona was apprised of specific facts showing its public statements were false.

Instead, much like with the prior briefing,[2] the Opposition rests on the fiction that Sona's clinical tests violated a purported requirement in the May 11, 2020 FDA template by not including enough patients within the first six days of symptom onset. But nothing in the May 11 template (or in the subsequent FDA templates) says anything about requiring any specific number of clinical trial subjects to fall within any specific number of days from onset of symptoms, nor did Sona itself make any prior public representation that its trials included any specific number of patients in the 0-6 day category.  At no point did Sona outline in its intended use statement for the test device, in its 'instructions of use,' or in any other public disclosure that the test was directed primarily at patients with symptoms between 0-6 days.  Further, as Plaintiff admits, the FDA publicly stated that its templates "should be viewed *only as recommendations*," not as requirements for approval.  (SAC ¶ 85) (emphasis added.)  The feedback about enrolling more patients in the "0-6 day" cohort moreover

---

[1] References to Plaintiff's Opposition will be abbreviated "Opp."  References to Defendants' opening memorandum (ECF No. 68) will be abbreviated "Mem."

[2] *See* ECF No. 60 at 7, 14 (making similar "0-6 day" symptom onset argument).

DOCUMENT PREPARED ON RECYCLED PAPER

came from Health Canada, not the FDA, and Sona promptly *disclosed* this feedback.[3] There is no particularized allegation that the FDA *ever* told Sona it needed more patients from this category. Plaintiff also does not dispute that Sona's clinical trials showed 100% sensitivity for the patients in the 0-6 day group.[4] In other words, the study showed that Sona's test *worked* for patients in that subgroup. Lastly, while Plaintiff incorrectly characterizes Sona's public statements as "unequivocal" representations that Sona "was poised to generate the requisite validation data" and as "unequivocally validating the Nasal Test" (Opp. at 3-4, 24), Sona's actual disclosures were far more measured and made nothing close to an "unequivocal" guarantee that Sona would generate sufficient clinical data to obtain approval, or that the trials would be deemed sufficient to satisfy all possible regulatory objections.

Plaintiff likewise fails to show how Sona's cautious representations support anything approaching a strong inference of scienter. The Opposition does not cite any new case authorities that cast doubt on this Court's prior reasoning or any new facts that would change the outcome. Dismissals with prejudice of second amended complaints in securities cases are routinely granted or affirmed – *including by the Ninth Circuit in Nguyen* and in multiple other recent cases – when a plaintiff fails to correct prior pleading deficiencies.[5] The same outcome is warranted here.

---

[3] *See* SAC ¶ 154 (reciting Sona's November 30, 2020 disclosure that it planned to include "more samples from patients within 0-6 days since symptom onset, as requested by Health Canada).

[4] *See* SAC ¶ 181.

[5] *See, e.g., Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020) (affirming dismissal of second amended complaint without leave to amend, where "the district court had already given Nguyen leave to amend" and the allegations remained insufficient); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (affirming dismissal of second amended complaint where "Plaintiffs have not shown any other basis for concluding that further amendment would not be futile"); *Davoli v. Costco Wholesale Corp.*, 854 F. App'x 116, 117 (9th Cir. July 20, 2021) (affirming dismissal of "Second Consolidated Amended Complaint"); *Plumley v. Sempra Energy*, 847 F. App'x 426, 431 (9th Cir. Feb. 26, 2021) (affirming dismissal with prejudice of second

- 2 -

## ARGUMENT AND AUTHORITIES

### I.  THE OPPOSITION OVERSTATES SONA'S DISCLOSURES.

Plaintiff again mischaracterizes Sona's cautious disclosures as "unequivocally validating" Sona's test.  (Opp. at 24.)  Sona made no such assurance of validation.[6]

- The Opposition tellingly skips any discussion of Sona's pre-May 2020 disclosures, which is unsurprising because Sona repeatedly conveyed in those disclosures that it was in the early pre-prototype stages of development.  (*See, e.g.,* SAC ¶¶ 95, 97) (citing March 18, 2020 disclosure that Sona had "commenced development of a functional prototype and April 13, 2020 disclosure that Sona had just "[c]ommenced work" to "prepare validation protocols.")

- Plaintiff claims Sona's May 12, 2020 press release "confirmed that Sona was poised to generate" the "requisite validation data" (Opp. at 3,) but this disclosure merely stated that Sona was "moving to test its devices" as "part of a formal clinical study."  (SAC ¶ 127.)  Simply saying that a company is "moving to test" its device is not a guarantee that the subsequent clinical study would produce sufficient results for approval.

- The Opposition complains about Sona's July 2, 2020 statement that laboratory testing showed "sensitivity" and "specificity" of 96%, but again identifies no specific or well-pled facts showing that Sona's laboratory tests had not in fact produced that data.  (*See* Opp. at 3.)  As the Court previously concluded, Plaintiff "plead[s] nothing indicating that the statements from April 16 to July 2 were untrue. . . ."  (*See* ECF No. 66 (Prior Dismissal Order, or "Opinion") at 11.)

---

amended complaint); *Sayce v. Forescout Techns., Inc.*, 2021 WL 4594768, at *10 (N.D. Cal. Oct. 6, 2021) (dismissing second amended complaint with prejudice).

[6] Plaintiff appears to abandon their prior conclusory objection to Defendants' exhibits, which again are fair game for consideration.  (*See* Mem. at 15 n. 15.)

- 3 -

DOCUMENT PREPARED ON RECYCLED PAPER

- The Opposition again cites Sona's July 8, 2020 statement about "bringing a COVID-19 rapid, point-of-care antigen test to fruition in four months" (Opp. at 3), but identifies no new particularized facts to undermine the Court's prior conclusion that Plaintiff's "fruition" argument "leaves much to be desired." (*See* Opinion at 11.) The same press release stated that Sona "will enter into independent clinical, in-field evaluation studies," and that the results of these clinical studies "should be provided by the end of July," thus expressly conveying that the clinical studies **had not even begun**. (SAC ¶ 133.) There is again no particularized allegation that any of the pre-clinical laboratory results obtained up to that point were in any way misstated or inaccurate.

- Plaintiff cites the August 25 and 31, 2020 disclosures regarding the study results, but again fails to allege any specific facts showing that this data was misreported in any way. (*See* Opp. at 4.) As the Court previously concluded, the August statements are "literally true, and Plaintiff pleads no information alleging otherwise." (Opinion at 11.)

- The Opposition again cites the October 1, 2020 "100% confident" statement, but there are no new allegations that undercut the Court's prior conclusion that this was "just a hopeful statement by Regan that did not come true" and was accompanied by "no specific allegations indicating that Regan believed or knew this statement was false." (Opinion at 11-12.) Again, Regan warned in that same interview that "the timeline" for approval – which Plaintiff admits was critical for successful commercialization – was "unclear." (*See* Mem. at 22.)

- The Opposition admits that Sona disclosed the adverse regulatory decisions from the FDA and Health Canada, including Health Canada's feedback about enrolling more patients in the 0-6 day category. (*See* Opp. at 4.5.) There is no allegation that Defendants knew about these

decisions earlier. As the Court previously concluded, "Sona made all of these supposed revelations public in its own press statements, and there is no allegation that Sona deliberately sat on any of this information before delayed public disclosure or had this information when making earlier rosy projections." (*See* Opinion at 14.) Likewise, Plaintiff's assertion that Sona should have provided more details about the reasons for the adverse decisions fails for the same reasons cited in the Court's prior opinion. (*See id.* at 13.) Sona made abundantly clear in its disclosures that the regulators found Sona's submission less compelling than its competitors and that additional clinical work was needed.

- Plaintiff's arguments about the "0-6 day" category likewise add nothing to Plaintiff's falsity and scienter claims. As stated on page 1 above, there is no allegation the FDA ever told Sona it needed a specific number of samples in this category.[7] The allegations also wholly fail to show that the FDA's public guidance actually contained any such requirement, or that Sona itself represented it was focusing its test on patients in that category or had enrolled a specific number of clinical subjects in that category. The FDA publicly stated that its templates were simply "recommendations" rather than requirements, and Plaintiff cites no specific FDA recommendation (let alone requirement) that specifically discussed the 0-6 category or suggested that clinical trials include a specific minimum number of patients in the 0-6 category. (*See supra* at 1-2.) And again, Plaintiff does not dispute that Sona's nasal test displayed 100% sensitivity for patients in that category. (*See id.*)

- The Opposition fails to explain how Sona's December 16, 2020

---

[7] As previously stated, because patients in the 0-6 day subgroup had high viral loads that would be easier to detect, Sona included more patients with smaller viral loads to show the test could successfully detect the virus in those more difficult to detect samples. (*See* Mem. at 26.)

DOCUMENT PREPARED ON RECYCLED PAPER

statement about obtaining additional financing, its December 31, 2020 disclosure about receiving a CE mark, or its 2021 disclosures about the saliva test contain any materially misleading statements or actionable omissions.  (*See* Opp. at 6-7.)  Plaintiff alleges no facts showing that Sona did not in fact obtain additional financing, receive a CE mark, or pursue clinical testing of the saliva test.  (*See* Mem. at 9-11; *see also* Opinion at 10 (concluding that prior complaint failed to show that December 2020 statements omitted any required information).

- The Opposition appears to make no mention of the "discordant" results issue, tacitly conceding there are no allegations that Sona received or knew about any purportedly discordant results before its November 30, 2020 statement that it was withdrawing its Health Canada application. (*See* Mem. at 25, 30.)  There is no assertion that the NML used the same strains of virus in the NML's own subsequent evaluation that produced the purportedly discordant results, or that the earlier SaudiVax study results were misrepresented or erroneous.

- Plaintiff again cites the "14,545% return" in Sona's stock price, but does not allege that any Defendants capitalized by selling their shares (which weighs ***against*** scienter).  (*See* Opp. at 11; Mem. at 14 n. 14.)  Clinical-stage biotech stocks are notoriously volatile, and cases involving large stock declines are routinely dismissed.  *See Nguyen*, 962 F.3d at 412 (affirming dismissal despite 36% stock price decline).

- Plaintiff lastly ignores their own allegations about how analysts and the market were well aware of the fact that other tests were being approved and the timing and competitive pressures that Sona was under (and the disadvantages companies with later-approved tests would face given the expectation the pandemic would eventually wane and the head start companies with earlier-approved tests would have).  (*See* Mem. at 19.)

DOCUMENT PREPARED ON RECYCLED PAPER

## II. PLAINTIFF'S CASE CITATIONS CONFIRM THAT THIS CASE FAILS ON THE PLEADINGS.

Plaintiff fails again to explain how the allegations suffice under *Nguyen*. Contrary to Plaintiff's suggestion (repeated from its prior briefing) that *Nguyen* be limited to "its facts," *Nguyen* is consistent with prior Ninth Circuit law, the law of other circuits, the consistent approach of district courts confronting similar allegations, and Section 10(b)'s plain language, which require allegations approaching actual intent to defraud and not simple (or even gross) negligence.[8] *Nguyen* is also consistent with settled law that scienter is much more difficult to plead when, as here, insider trading or other personal financial motives are not alleged.[9]

Plaintiff's authorities – most of which were cited in the prior briefing and addressed in Defendants' prior Reply – again merely highlight the types of allegations necessary to survive dismissal that are absent here. The complaints in Plaintiff's post-PSLRA cases[10] contained ***particularized*** allegations supporting a strong inference that the defendants had ***contemporaneous knowledge*** of ***specific facts*** that contradicted what the defendants were publicly telling investors.[11]

Further, unlike in Plaintiff's cited authorities, there are no particularized allegations showing that Defendants knew of any specific study results that

---

[8] *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) (Rule 10b-5 requires "intent to deceive, manipulate, or defraud"); Sona Mem. (ECF No. 56) footnote 38.

[9] *See Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001) (plaintiffs face "correspondingly greater" burden to show defendants' knowledge of contrary facts when motive is not alleged); *see* Mem. at 10 footnote 9 (collecting cases).

[10] Plaintiff cites *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996), but the complaint in that action predated the PSLRA, which elevated the pleading standard for scienter from the preexisting Rule 9(b) provision allowing scienter to be averred generally merely so defendants could "prepare an adequate answer." *See id.* Even in *Warshaw*, the complaint asserted that the defendants "knew" facts contradicting their disclosures, which has not been pled with particularity here. *See id.*

[11] *See* ECF No. 62, Prior Reply at 5 footnote 7 (distinguishing cases cited in prior Opposition, which Plaintiff has largely cited again in current Opposition).

DOCUMENT PREPARED ON RECYCLED PAPER

contradicted their public disclosures [12] or misrepresented any specific communications with the FDA or other regulators.[13] Plaintiff also cites cases with detailed allegations from internal "confidential witnesses" attributing knowledge of contrary facts to key executives.[14] Many of Plaintiff's cases likewise involve attempts to conceal blatantly improper activity.[15] The allegations in Plaintiff's cases remain far afield from the conclusory fraud-by-hindsight allegations made here.[16]

Plaintiff also fails to rebut Defendants' case citations holding that generalized corporate desires to stay in business, raise money, and receive salaries are insufficient to show scienter. (*See* Mem. at 14 & n. 11-12.) The absence of any remotely sufficient motive allegation further supports dismissal. (*See id.* at 32.) Further, the "core operations" theory does not apply, as the challenged statements are not false in the first instance, and certainly not so "dramatically false" as to support an inference the individual Defendants must have known they were misleading.[17] Plaintiff alleges no facts showing that ***anyone*** at Sona, much less the individual Defendants, was apprised in real time of facts that would render Sona's disclosures false. The Opposition likewise identifies no facts showing that the purportedly omitted facts were actually known by Defendants at the time of the alleged misstatements, let alone that they rendered any specific affirmative statement misleading given Sona's

---

[12] *See* ECF No. 62, Prior Reply at 6 footnote 8 (distinguishing additional cases).
[13] *See* ECF No. 62, Prior Reply at 7 footnote 9 (distinguishing additional cases).
[14] *See* ECF No. 62, Prior Reply at 7 footnote 10 (distinguishing additional cases).
[15] *See* ECF No. 62, Prior Reply at 8 footnote 11 (distinguishing additional cases).
[16] Plaintiffs also rely on *Construction Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.*, a case that ***granted*** dismissal despite allegations that the executives received a "warning" that their FDA application was supported by insufficient data. 2008 WL 4370010, at *4 (S.D. Cal. Sept. 23, 2008).
[17] *See In re NVIDIA Corp. Secs. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (noting that "the core operations inference will generally fall short of a strong inference of scienter" absent "unusual circumstances") (internal citations omitted).

DOCUMENT PREPARED ON RECYCLED PAPER

repeated cautionary disclosures that timely regulatory approval was not assured.[18]

In sum, Plaintiff's cases again simply establish that the "cut line" for surviving a motion to dismiss remains far above what Plaintiff has alleged here.  Defendants also incorporate their prior arguments about the PSLRA safe harbor, bespeaks caution doctrine, and the protections for statements of opinion.  (*See* Mem. at 30-31.) Lastly, the Opposition appears to make no mention of Plaintiff's deficient "scheme liability" claim.  (*See* Mem. at 31.)  While a properly pled misrepresentation may be separately actionable as a "scheme" claim, insufficient misrepresentation claims cannot simply be repackaged as scheme claims, and Plaintiff identifies no particularized facts that would support a scheme claim.[19]  The control person claims likewise fail without a viable primary claim.  (*See* Mem. at 33.)

## III.    DISMISSAL SHOULD BE WITH PREJUDICE

Instead of heeding the Court's admonition to amend only if Plaintiff "can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order,"[20] the SAC consists almost entirely of reheated leftover allegations from the prior complaint, served with the same stale (and meritless) fraud-by-hindsight theory that Defendants must have known about (and fraudulently concealed) adverse information at the time of earlier statements just because they disclosed unfavorable news later.[21]  As set forth in footnote 5 above, there has been a clear trend in the Ninth Circuit – ***including***

---

[18] A statement must be affirmatively misleading, and not merely incomplete by omission, to be actionable.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014).

[19] *See In re Nektar Therapeutics*, 2020 WL 3962004, at \*14 (C.D. Cal. July 13, 2020) (dismissing scheme claim); *In re Edward D. Jones & Co., L.P. Secs. Litig.*, 2019 WL 5887209, at \*7-8 (E.D. Cal. Nov. 12, 2019) (dismissing scheme claim that was "nothing more than a repackaging of the Rule 10b-5(b) omission claims" that were insufficient to state a claim under Rule 10b-5(b)).

[20] *See* Opinion at 17.

[21] *See id.* at 13 ("To start, the only allegations Plaintiffs bring to substantiate these omissions come directly from Sona's own press releases.  A plaintiff is 'hard-pressed to build a fraud case' from publicly disclosed information'") (quoting *Nguyen*, 962 F.3d at 416).

DOCUMENT PREPARED ON RECYCLED PAPER

*in Nguyen itself* – to affirm dismissals with prejudice and deny further leave to amend when a second amended securities class action complaint fails to cure the defects leading to dismissal of the prior complaint.[22]   Plaintiff cites no new allegations that warrant any hope of a third amended complaint stating a valid claim.

## CONCLUSION

The Court should thus dismiss this action with prejudice.

Dated:  December 20, 2021      **NORTON ROSE FULBRIGHT US LLP**

By ___/s/ Peter A. Stokes_____
        PETER A. STOKES
        Attorneys for Defendants
        SONA NANOTECH INC., DAVID
        REGAN, ROBERT RANDALL, AND
        DARREN ROWLES

---

[22] *See Nguyen*, 962 F.3d at 420; *see supra* footnote 5 (citing additional cases granting or affirming dismissal of second amended complaints with prejudice).

DOCUMENT PREPARED ON RECYCLED PAPER

## PROOF OF SERVICE

I, Peter A. Stokes, declare:

I am a citizen of the United States and employed in Travis County, Texas. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701, with a Los Angeles office located at 555 South Flower Street, Forty-First Floor, Los Angeles, California 90071. On December 20, 2021, I served a copy of the within document(s):

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail.

☐     by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒     by transmitting via e-mail or other electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Ivy T.Ngo (249860)
Velvel (Devin) Freedman
Constantine P. Economides
**ROCHE FREEDMAN LLP**
1 SE 3rd Avenue, Suite 1240
Miami, Florida 33131
Tel: (786) 924-2900
ingo@rcfllp.com
vel@rcfllp.com
ceconomides@rcfllp.com

**THE SCHALL LAW FIRM**
Brian Schall (290685)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Attorneys for Lead Plaintiff*
*Meridian Media Ventures inc. and*
*the Putative Class*

DOCUMENT PREPARED ON RECYCLED PAPER

- 11 -